United States District Court
Southern District of Texas
**ENTERED**
January 30, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Jorge Feijoo,<br>    *Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action H-21-2444 |
| Costco Wholesale Corporation,<br>    *Defendant.* | §<br>§<br>§ | |

# MEMORANDUM AND ORDER

Pending before the court in this employment dispute is Defendant's motion for summary judgment, ECF No. 16. The parties consented to the jurisdiction of the magistrate judge, and the district judge transferred the case to the undersigned for all further proceedings, including entry of final judgment. ECF Nos. 14–15. As discussed below, Defendant's motion for summary judgment is DENIED.

## 1. Procedural and Factual Background

Plaintiff filed this complaint on July 28, 2021. Pl.'s Compl., ECF No. 1. He alleged disability discrimination, age discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and the Texas Commission on Human Rights Act (TCHRA), Texas Labor Code §§ 21.051–21.061. Pl.'s Compl. ¶¶ 7.1–7.21.

Defendant filed a motion for summary judgment in August 2022. ECF No. 16. The motion is fully briefed. *See* ECF Nos. 16, 18, 19.

On November 19, 1992, Defendant Costco Wholesale Corporation (Costco) hired Plaintiff Jorge Feijoo as a forklift operator. *See* ECF No. 16-8; Pl.'s Decl. ¶ 1, ECF No. 18-4. During his tenure, Feijoo also held other positions at Costco, including food court supervisor and cashier. ECF No. 16-8. In July 2016, Feijoo transferred from Florida to the Houston area to work as a forklift operator. *Id.*; ECF No. 18-7 at 4. Feijoo suffered from tinnitus, which caused significant hearing loss. Pl.'s Decl. ¶ 3. By early 2020, Feijoo was completely deaf in his right ear and seventy-five percent deaf in his left ear. *Id.* He notified his managers of his condition and was able to perform his job with accommodations. *Id.*

Here is Feijoo's account of the events leading up to the termination of his employment:

- In early 2020, Feijoo notified Costco that he planned to retire at the age of fifty-nine and a half. Pl.'s Decl. ¶ 4. Sometime after notifying Costco of his retirement plan, Feijoo received a written performance notice for being rude. *Id.* He explained to his supervisors that he was unable to hear the employee who had been speaking to him. *Id.*

- Jennifer Castro, assistant general manager at the Costco warehouse, asked Feijoo to wear an earpiece so that she could call him over the radio. Pl.'s Dep. at 14, 19, 30, ECF No. 18-18; *see also* ECF No. 18-7 at 4. Feijoo told her that wearing the earpiece would require that he disconnect his hearing aid. *Id.* Castro responded by saying that other employees with the same issue were able to wear the earpiece. *Id.* Feijoo told her that, if he had the radio in his ear, he could not hear others in his vicinity. *Id.* at 15.

2

- During the 2019 holiday season, Castro changed Feijoo's schedule so that he was working more than seven days in a row before having a day off. Pl.'s Dep. at 16, 32. Feijoo explained that he would work Monday through Friday the first week of a two-week pay period, have four days in a row off, and then work the final five days of the pay period. *Id.* at 39. The next pay period began with five workdays, resulting in ten workdays in a row. *See id.* at 39–40, 97. Castro told Feijoo that Costco was allowed to do that because of the holidays. *Id.* Castro claimed that he was the only employee with that schedule and that, after the holidays, Castro refused to change Feijoo's schedule back. *Id.* at 16–17. Castro told Feijoo to choose different off days than those assigned to Feijoo for ten years. *Id.* at 17, 98.

- Castro also challenged Feijoo for calling in sick too often, which Feijoo attributed to her believing he was abusing his longtime employment by using accrued sick leave. Pl.'s Dep. at 18. Feijoo claimed to have been using sick leave appropriately and believed that Castro discriminated against him based on his age and tenure. *Id.* at 18–19.

- Castro also accused Feijoo of stealing and gave him a written disciplinary notice. Pl.'s Dep. at 17. Feijoo reported that to the store manager who "void[ed] everything and made a different write-up." *Id.*

- Feijoo believed that he "was being subjected to increasingly negative treatment" and complained to Kim Brown, vice president and regional operations manager. Pl.'s Decl. ¶¶ 4–5; *see also* ECF No. 18-7 at 4. He also informed her that his "schedule interfered with [his] Friday doctor's appointments." *Id.* ¶ 4; *see also* Pl.'s Dep. at 93–95. About his appointments, Jeff Polloreno, general manager of the Costco warehouse, told Feijoo that Costco "did not care about [his] doctor's appointments and [that Feijoo] needed to just schedule them around [his] work schedule." Pl.'s Decl. ¶ 5; *see also* ECF No. 18-7 at 4. Polloreno also told Feijoo that he would move employees from another building so that Feijoo could return to his regular working schedule but never followed through or found another solution. Pl.'s Dep. at 35.

- On April 4, 2020, Feijoo was operating a forklift to take down merchandise from warehouse shelves when Chris Hall, a new seasonal

stocker who was younger than forty, confronted Feijoo about taking down too much merchandise. Pl.'s Decl. ¶¶ 7–8. Hall "repeatedly yelled and cursed at [Feijoo], stating that [Hall] did not want to work anymore[] and he was ready to go home." *Id.* ¶ 8.

- Feijoo got off the forklift. Pl.'s Decl. ¶ 8. According to Feijoo, "suddenly and unexpectedly without provocation," Hall pushed Feijoo, who fell to the ground. *Id.*; *see also id.* ¶ 15. Feijoo did not return the physical contact and did not attempt to hit Hall. *Id.* ¶¶ 6, 8; *see also id.* ¶ 15 (stating that Feijoo did not initiate the incident). No one else was present when Hall pushed Feijoo. *See* Pl.'s Decl. ¶¶ 11, 14 (stating that Ryan Pearce, Shaye Massey, and Sal Davide were not present when Hall pushed Feijoo).

- After pushing Feijoo, Hall "ran away towards where the managers were." Pl.'s Decl. ¶ 9. Feijoo "went in that same direction . . . to speak with a manager as well about what happened." *Id.*; *see also id.* ¶ 15 (stating that Feijoo was walking quickly to where the managers were to report what had happened). Feijoo affirmed that he was not chasing Hall. *Id.*

- After the incident, Feijoo went to the office and spoke with Pearce, the manager in charge of the night crew. Pl.'s Dep. at 53–54. Feijoo went to the breakroom to pick up his belongings before leaving. *Id.* at 55. He saw Hall "in one of the corners of the break room" but did not move toward him or yell at him. *Id.* at 56.

- Feijoo denies that he told either Castro or Hall that he would meet Hall outside and denies that he waited for Hall in the parking lot. Pl.'s Decl. ¶¶ 7, 12–13; Pl.'s Dep. at 44; *but see* ECF No. 16-23 at 4 (stating in additional comments that Feijoo told interviewers that he would hurt Hall). Feijoo also denies that he ever threatened Hall or told Castro that he would hurt Hall. Pl.'s Decl. ¶ 12; Pl.'s Dep. at 44.

According to the investigation notes from interviews with Hall and Feijoo and the investigation summary of witness statements, Feijoo refused to answer questions or give a statement. *See* ECF No. 16-17 at 3; ECF No. 16-23 at 3. The investigation documentation states that the accounts attributed to Feijoo were

4

based on "the story he told" in the interview and Feijoo's "verbal summary of what

had happened." ECF No. 16-17 at 3; ECF No. 16-23 at 3.

According to the interview notes, Castro and Darryl Williams interviewed

Feijoo and he stated that:

> I had finished in receiving, and I was dropping pallets to stock, when
> everyone was cleaning up. I asked why[,] and they told me that it was
> the direction of the manager[] because they wanted to get out early. I
> told them that I would be staying to stock. [Hall] came from the dock,
> cussing at me, that I am not the boss, and pushed me. I kept following
> him, and asking him why he pushed me. I kept following him[] and
> asking him why he pushed me. Half way [sic] down the main aisle, I
> noticed that [Pearce] was walking towards us. [Pearce] continued to
> try and protect Chris, and I wanted answers as to why he pushed m[e].
> I then went to the office with Justin [Khan] to wait to speak to
> [Pearce]. In the office, I asked [Pearce] if he gave direction to finish
> stocking early, so we would get out early. He said no, which didn't
> match what the crew was saying, so they were lying. I also told
> [Pearce] that Chris pushed me. [Pearce] did not care, so I left to go to
> the breakroom. In the breakroom, I saw [Hall] and started approaching
> him again, asking him why he pushed me. When [Pearce] came into
> the breakroom. I told Chris, that I [would] meet him outside.

According to Costco's documentation of Feijoo's verbal statement, Feijoo

stated in part that:

> [Hall] came off the dock, screaming and cussing at me that I am not
> the boss. I got off of my lift to talk to him, and he pushed me[] and
> started to run away. I followed him[] because I wanted to know why
> he pushed me. . . .
>
> I then went into the office with [Khan], waiting to talk to [Pearce].
> When we were done, I went into the breakroom, where I saw Chris
> sitting there. I asked him why he pushed me, but [Pearce] came into
> the breakroom to get me. [Pearce] then told me to go home. I went to

the back to get my stuff[] and then went to the parking lot, where I
waited for Chris to come out, but when he did, he was escorted by
other employees.

ECF No. 16-17 at 3.

Hall provided a statement, stating in part that:

[Khan] (Mgr) told me to wrap it up and clean up. After cleaning up
[Feijoo] dropped 6 more pallets and started bossing ever[y]one
around. At this time I told him [Khan] said to clean up. [Feijoo] got
off the forklift and got in my face and yelled who you talking too
[sic]. He then swung at me[] and I ran away due to not wanting to lose
my job. He chased me all the way up to the front of the store. [Pearce]
tried to stop him and he still tried to fight me. Before leaving [Feijoo]
threatened me he was gonna get me outside. This is workplace
violence and not acceptible. In front of two managers.

ECF No. 16-20.

Four other employees who were in the warehouse at the time, including
Pearce and Khan, the two managers on duty, provided statements. *See* ECF
Nos. 16-18 (Davide's statement), 16-19 (Massey's statement), 16-21 (Khan's
statement), 16-22 (Pearce's statement). None of the other employees saw the entire
altercation, and none observed Feijoo swing at Hall or Hall push Feijoo. *See id.*
Massey stated, "I heard yelling and shouting, not sure what about exactly" and that
Hall tried to walk away from Feijoo after exchanging words and then Feijoo got
off his lift to follow Hall. ECF No. 16-19. Davide stated that Feijoo "jumped off
his lift [and] went up to [Hall] ins[t]igating a fight from looks of it" and that he saw
Hall duck and start running. ECF No. 16-18.

6

Khan's and Pearce's statements indicated that they were called after the initial confrontation. ECF Nos. 16-21, 16-22. Both observed Hall walking down the warehouse aisle with Feijoo following behind. *Id.* According to Kahn, Hall claimed that Feijoo swung at him, and Feijoo claimed that Hall pushed him. ECF No. 16-21. Both Kahn and Pearce stated that Feijoo advanced toward Hall in the aisle and in the breakroom. ECF Nos. 16-21, 16-22. Neither statement corroborated Hall's assertion that Feijoo had threatened to get Hall in the parking lot in front of the two managers. *Id.*

On April 5, 2020, Costco issued Feijoo an employee counseling notice that stated Feijoo had violated Costco's policy against "[a]ny actual or threatened act of viol[e]nce or physical aggression, including, but not limited to, fighting, shoving, striking, or attempting to strike another person on Company premises or on Company time." ECF No. 16-25 (quoting Employee Agreement, ECF No. 16-28 at 4). The counseling notice stated that the violation resulted from Feijoo's attempt to strike Hall, after which Feijoo followed Hall and "continued to try and escalate the issue more[] by yelling and coming towards the employee and managers, as if he was going to fight them." *Id.* Under the heading "Plan to correct behavior or policy violation[,]" the counseling notice stated that Feijoo was placed on a three-workday, unpaid suspension. *Id.* In a suspension form dated April 7, 2020, the reason for Feijoo's suspension was stated as allowing for investigation.

ECF No. 16-24. Costco did not discipline Hall and later sent Hall a letter stating that his complaint about Feijoo's inappropriate conduct was valid. ECF No. 18-7 at 6; ECF No. 18-12 at 2.

On April 6, 2020, Castro requested that Feijoo be terminated stating the cause as violation of Costco's policy against "[a]ny actual or threatened act of violence or physical aggression, including, but not limited to, fighting, shoving, striking, or attempting to strike another person on Company premises or on Company time." ECF No. 16-27 (formally requesting Feijoo's termination); *see also* ECF No. 18-7 at 4 (stating only that Castro was involved in the discussions about terminating Feijoo). Castro provided the following description of the incident:

> Jorge [Feijoo] verbally abused and attempted to strike another employee, following him down the aisle quickly[] as the employee went to get help. He repeatedly attempted to advance towards the employee with managers present, as they were being separated. As Jorge was leaving, he saw the employee again in the breakroom, cussing and advancing towards him, as if he was going to physically hurt him.
>
> The senior manager, repeatedly tried to separate the employees, but Jorge would not listen.
>
> As he was leaving the breakroom he threatened the employee, that he would be waiting in the parking lot for him.
>
> Jorge admitted that he did wait for the employee in the parking lot, but the employee was escorted out by lot security.

*Id.*

8

Polloreno made the decision to terminate Plaintiff. ECF No. 18-7 at 4. The termination form, which was signed by Polloreno with Castro as a witness stated the reasons for termination to be violations of company policy including threats or acts of violence, jeopardizing order/safety, and serious misconduct. ECF No. 16-26 at 2. The form detailed Feijoo's actions that led to his termination: "Jorge engaged in an altercation with a co-worker. He tried to physically assault the co-worker numerous times[] and made threats that he would 'wait for him outside.'" *Id.* Polloreno sent Feijoo a termination letter stating that Costco terminated Feijoo's employment because he violated "Costco's rule prohibiting physical violence, as well as attempting or threatening physical violence" and because he had "history of engaging in aggressive and/or violent behavior and other serious misconduct." *Id.* at 3. Brown and Russ Miller, executive vice president, reviewed and approved the decision. ECF No. 18-7 at 4.

Feijoo was fifty-eight at the time of his termination on April 14, 2020. Pl.'s Decl. ¶¶ 1–2. After Costco terminated Feijoo's employment, Shaye Massey, who was twenty-five years old with no known disability, and Logan Ross, who was thirty-four with no known disability, were promoted to parttime forklift drivers. ECF No. 18-7 at 6.

## 2. Summary Judgment Standard

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite to "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The court, however,

does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 4. Analysis

Defendant seeks summary judgment on Plaintiff's claims under the ADA, ADEA, and the TCHRA for disability discrimination, age discrimination, retaliation, and failure to accommodate. TCHRA claims are analyzed under the analogous federal precedents interpreting the ADA and the ADEA. *See Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006) (analyzing ADA and TCHRA disability-discrimination claims together under federal law); *Smith v. AT&T Mobility Servs., L.L.C.*, No. 21-20366, 2022 WL 1551838, at *2

(5th Cir. May 17, 2022) (analyzing ADEA and TCHRA age-discrimination claims together under federal law).

When based on circumstantial evidence, as here, the discrimination and retaliation claims are analyzed under the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Moore v. Burlington N. Santa Fe Ry. Co.*, No. 21-20103, 2022 WL 16860550, at *4 (5th Cir. Nov. 11, 2022) (applying the burden-shifting approach to an ADA disability discrimination claim); *Smith*, 2022 WL 1551838, at *4 (applying the burden-shifting approach to ADEA and TCHRA age discrimination claims); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (applying the burden-shifting approach to an ADA retaliation claim); *Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 403 (5th Cir. 2022) (applying the burden-shifting approach to an ADEA retaliation claim).

The burden-shifting approach places the initial burden on the plaintiff to establish a prima facie case by producing evidence meeting each element. *See Lyons*, 964 F.3d at 304. The defendant must respond by providing a legitimate, nondiscriminatory reason for its action. *Id.* If the employer meets its burden, the employee must produce evidence showing that the proffered reason is pretextual. *Id.*

## A. Prima Facie Cases

Feijoo first must produce evidence in support of his prima facie cases for disability discrimination, age discrimination, and retaliation.

### i. Disability and Age Discrimination

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also* Tex. Labor Code § 21.051. The ADEA similarly prohibits discrimination against an employee based on age. *Smith*, 2022 WL 1551838, at *2 (citing 29 U.S.C. § 621(a)(1); Tex. Lab. Code § 21.001).

To state a prima facie case for discrimination under the ADA, the plaintiff must show that he: (1) was disabled; (2) was qualified for the job; and (3) suffered an adverse employment action based on his disability. *Moore*, 2022 WL 16860550, at *4 (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)). An ADEA prima facie case for discrimination requires evidence showing that he: (1) was older than forty; (2) was qualified for the job; (3) suffered an adverse employment action; and (4) was replaced by or treated less favorably than someone younger than forty. *Drerup v. Consol. Nuclear Sec., L.L.C.*, No. 21-10600, 2022 WL 3335780, at *4 (5th Cir. Aug. 12, 2022);

*see also* 29 U.S.C. § 631 (stating that the ADEA's prohibitions are "limited to individuals who are at least 40 years of age").

Costco concedes that Feijoo was older than forty and, for purposes of its summary judgment motion only, "assumes that Feijoo can establish . . . that he had a disability and was qualified for his job at Costco." ECF No. 16 at 12 n.34. Costco does not address any other element of a prima facie case for disability or age discrimination. *See id.* at 12–15. The evidence shows that Feijoo was fifty-eight, that he had a hearing impairment, that Costco terminated Feijoo's employment, and that Feijoo was replaced by two individuals under the age of forty with no known disabilities. *See* Pl.'s Decl. ¶¶ 2–3; ECF No. 16-26; ECF No. 18-7 at 6. This undisputed evidence satisfies Feijoo's prima facie burden on disability and age discrimination.

### ii. Retaliation

The ADA and the ADEA make it illegal for an employer to retaliate against an employee for engaging in a protected activity. *See* 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a). To state a prima facie case for retaliation, the plaintiff must produce evidence showing that: (1) he was engaged in an activity protected under the statute; (2) he "suffered an adverse employment action[;]" and (3) there was "a causal connection between the protected activity and the adverse action." *Lyons*, 964 F.3d at 304 (addressing retaliation under the ADA); *Bailey, L.L.C.*, 35 F.4th at

14

403 (addressing retaliation under the ADEA). A prima facie case for retaliation under the ADA also requires the plaintiff to show that he was a qualified individual at the time the employer took the adverse action. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 420 (5th Cir. 2017).

As stated above, Costco assumes that Feijoo was qualified for his job. ECF No. 16 at 12 n.34. Costco does not address any other element of a prima facie case for retaliation. At a minimum, the evidence shows that, in the months preceding the termination of his employment, Feijoo reported a series of negative actions that Castro took against Feijoo after he refused to wear an earpiece. Pl.'s Decl. ¶¶ 4–5; Pl.'s Dep. at 14–17. Sometime after notifying Costco of his retirement plan, Feijoo received a written performance notice for being rude. Pl.'s Decl. ¶ 4. Costco terminated Feijoo's employment within months of these events. *See* ECF No. 16-26 at 2. Because Costco did not challenge the evidence in support of a prima facie case of retaliation, the court finds that Feijoo met his burden.

### B. Legitimate, Nondiscriminatory Reason

The burden shifts to Costco to state a legitimate, nondiscriminatory reason for terminating Feijoo's employment. *See Moore*, 2022 WL 16860550, at *4; *Smith*, 2022 WL 1551838, at *4. Costco's proffered reason in its summary judgment motion is that Feijoo "attempted to physically attack his coworker[.]"

ECF No. 16 at 5. In the termination paperwork, Costco asserted that Feijoo had violated Costco's policy against actual or threatened acts of violence or physical aggression. *See* ECF No. 16-25 (stating this reason in the employee counseling notice); ECF No. 16-27 (stating this reason in the request for termination). The termination form similarly stated the reason for terminating Feijoo's employment as violations of company policy against threats or acts of violence, jeopardizing order/safety, and serious misconduct. ECF No. 16-26 at 2. The letter to Feijoo added that Feijoo had "a history of engaging in aggressive and/or violent behavior and other serious misconduct." *Id.* at 3.

Feijoo does not argue that Costco has not stated a legitimate, nondiscriminatory reason.

### C. Pretext

The burden shifts back to Feijoo to produce evidence that Costco's stated reason was not the real reason but was pretext for discrimination and retaliation. *See, e.g., Lyons*, 964 F.3d at 304. Close temporal proximity is sufficient to satisfy the prima facie case but not to demonstrate pretext. *Id.* at 306–07. However, sufficient evidence that an employer's proffered reason is false in combination with the establishment of a prima facie case "may permit the trier of fact to conclude that the employer unlawfully discriminated." *Sears v. Zions Bancorporation NA*, No. 21-10448, 2022 WL 1800779, at *4 (5th Cir. June 2,

2022) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). The plaintiff need not prove pretext at the summary judgment stage but need only establish a genuine issue of material fact. *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).

Costco argues that Feijoo cannot show: (1) that Costco's stated reason for terminating his employment was false; (2) that Costco failed to follow its policy on workplace violence or threats of violence; or (3) that any other employee who engaged in similar conduct was not terminated. ECF No. 16 at 6, 13–15. Related to Costco's first argument, it also argues that Feijoo has not presented any evidence showing that Costco did not reasonably believe that Feijoo violated its policy and that Costco acted in good faith on that belief. *Id.* at 6 (citing *Cervantez v. KMGP Servs. Co.*, 349 F. App'x 4, 10 (5th Cir. 2009)); *see also* ECF No. 16 at 14.

The question on summary judgment is not what really happened on the night of April 4, 2020 or what Feijoo now testifies that he did or did not do. The question is whether the information management had about the incident gave rise to a reasonable belief that Feijoo violated Costco's policy against actual or threatened acts of violence or physical aggression.

The factual discrepancies between Feijoo's and Hall's accounts of happened, as reported to Costco, are genuine and material, precluding summary judgment. The evidence is clear that management was aware that Feijoo and Hall each

17

accused the other of engaging in aggressive conduct. Feijoo reported that Hall physically assaulted him by pushing Feijoo to the ground. Hall reported that Feijoo threatened physical assault by swinging and missing Hall. Feijoo reported that he followed Hall toward the managers to find out why he had pushed Feijoo. Hall reported that Feijoo was chasing Hall.

No other employee witnessed the initial altercation, and their statements lack any real evidence to support Costco's decision to favor Hall's account over Feijoo's. *See* ECF Nos. 16-18, 16-19, 16-21, 16-22. Although Davide stated that he saw Hall "duck and start running from [Feijoo]," neither he nor any other employee claimed to have seen Feijoo swing at Hall or Hall push Feijoo to the ground. *See id.* The other employees reported little more than hearing Feijoo and Hall yelling at one another and observing Feijoo following Hall. *See id.*

The court has reviewed the video more than once and finds its significance unclear. The video did not capture the initial altercation. *See* ECF No. 16-30. It shows Feijoo following Hall from the left of the screen, while Hall seems to be telling a manager ahead of him (screen right) what happened. *Id.* Hall passes the manager who is now between Feijoo and Hall. *Id.* The manager puts his arm out toward Feijoo to stop him. *Id.* Feijoo stops. *Id.* The manager backs Feijoo up further to the left and turns to the right to address Hall. *Id.* Hall seems to be saying something to the manager. *Id.* A different manager comes onto the screen from the

right. *Id.* The second manager seems to tell Hall to move further to the right. The first manager appears to be talking to Feijoo while Hall stays there. *Id.* The first manager seems to tell Feijoo to leave. *Id.* Feijoo and Hall now have a display bin between them. *Id.* Instead of leaving, Feijoo walks around the bin toward Hall, and Hall backs away keeping the bin between them. *Id.* Feijoo seems to check himself, backs up the way he came, goes around the other side of the bin where Hall is, but instead of further approaching Hall, he leaves the scene to the right. *Id.* Hall remains on the scene and the video ends. *Id.*

On the one hand, Feijoo and Hall obviously had a confrontation and managers intervened to break it up. Also, Feijoo can be seen perhaps not following instructions. But it does not show anyone trying to hurt anyone or anyone trying to restrain Feijoo. It is open to a variety of inferences, including that Feijoo exhibited no actual or threatened acts of violence or physical aggression. The court cannot simply credit Hall's version of what the video shows over Feijoo's. Both versions of events are plausible.

If Castro relied on the witnesses' statements and interviews in recommending termination and Polloreno relied on Castro's recommendation in deciding to terminate Feijoo, a jury could find that the evidence did not give rise to a reasonable belief that Feijoo violated Costco's policy against actual or threatened

acts of violence or physical aggression and that Costco accepted the version of the younger, not disabled employee over Feijoo's version.

The court must credit evidence in favor of the plaintiff over contradictory evidence on key factual conclusions. *See Tolan*, 572 U.S. at 657. The facts before the court, taken in favor of Feijoo raise jury questions, not only on what actually happened, but on whether Costco had any basis for reasonably believing that Feijoo and only Feijoo violated Costco's policy. Thus, Feijoo's evidence in support of his prima facie cases and the above evidence is sufficient to raise a fact issue on pretext. Because this finding alone warrants the denial of summary judgment on pretext, the court does not address the parties' other arguments.

Defendants' summary judgment motion is denied on the disability discrimination, age discrimination, and retaliation claims.

## C. ADA Accommodation

The ADA prohibits employers from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability[.]" 42 U.S.C. § 12112(b)(5)(A); see also *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020). To state a claim for failure to accommodate, "the plaintiff must show (1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable

accommodations for such known limitations." *Drake v. Spring Indep. Sch. Dist.*, No. 20-20376, 2021 WL 3176081, at *5 (5th Cir. July 27, 2021) (quoting *Moss*, 851 F.3d 417). The definition of "reasonable accommodations" includes "[j]ob restructuring; part-time or modified work schedules; . . . acquisition or modifications of equipment or devices; . . . and other similar accommodations[.]" 29 C.F.R. § 1630.2(o)(2)(ii); *see also* 42 U.S.C. § 12111(9)(B). When an employee "presents a request for an accommodation, the employer is required to engage in [an] interactive process so that *together* they can determine what reasonable accommodations might be available." *Gonzalez v. United Parcel Serv.*, 777 F. App'x 735, 739 (5th Cir. 2019) (emphasis in original) (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 622 (5th Cir. 2009), *abrogated in part on other grounds by LHC Grp.*, 773 F.3d 688).

Costco argues only that Feijoo did not request an accommodation. ECF No. 16 at 15. The evidence shows that Feijoo told Castro that he could not wear an earpiece because it interfered with the hearing aid in his only hearing ear and that he requested from Castro a schedule change so that he could attend doctor appointments on Fridays. *See* Pl.'s Decl. ¶ 4; Pl.'s Dep. at 14–15. About the earpiece, Feijoo testified that Castro pushed back and thereafter took several negative actions against Feijoo including changing his schedule. Pl.'s Dep. at 14.

About the appointments, Feijoo testified that Polloreno told Feijoo that he needed to schedule his appointments around his work schedule. Pl.'s Decl. ¶ 5.

Costco argues only that Feijoo "clearly knew the process . . . to request time off for medical appointments." ECF No. 16 at 15 (citing ECF Nos. 16-9–16-14, five doctors' notes requesting leave under the Federal Medical Leave Act and one doctor's note stating that Feijoo needed to avoid working in a cold environment). Costco presents no evidence or argument showing that ADA requests must be made in a particular way or that Costco notified Feijoo of the proper procedure when he raised these issues. Indulging all inferences in Feijoo's favor, the court finds that Feijoo requested accommodations.

Because Feijoo made requests for accommodations, the ADA required Costco to engage in an interactive process to determine reasonable accommodations. Costco does not present evidence showing that it met that obligation. Thus, a fact issue exists whether Costco failed to accommodate Feijoo's limitations. Costco also argues that Feijoo's deposition testimony shows that he did not need the requested accommodation for medical appointments. ECF No. 16 at 16. To allow after-the-fact justification for not engaging in the interactive process would undermine the very purpose of requiring an interactive process to enforce the ADA's accommodation provisions.

Defendants' summary judgment motion is denied on the failure to accommodate claim.

**5. Conclusion**

The summary judgment record raises genuine issues of material fact as to all of Feijoo's claims. Accordingly, Defendants' motion for summary judgment is DENIED.

Signed at Houston, Texas on January 28, 2023.

_____

Peter Bray
United States Magistrate Judge

23